# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

HEALTHY GULF, BAYOU CITY
WATERKEEPER, FRIENDS OF THE
EARTH, CENTER FOR BIOLOGICAL
DIVERSITY, NATURAL RESOURCES
DEFENSE COUNCIL, and SIERRA CLUB,

   *Plaintiffs*,

  v.

DEBRA A. HAALAND, LAURA DANIEL-
DAVIS, U.S. DEPARTMENT OF THE
INTERIOR, and BUREAU OF OCEAN
ENERGY MANAGEMENT,

   *Defendants,*

  and

CHEVRON U.S.A. INC.,
   6001 Bollinger Canyon Road
   San Ramon, California 94583-2324

   *Proposed*
   *Intervenor/Defendant.*

No. 1:23-cv-00604-APM

## CHEVRON U.S.A. INC.'S
## MOTION TO INTERVENE AS A DEFENDANT

Nikesh Jindal (D.C. Bar 492008)
Ashley C. Parrish (D.C. Bar 464683)
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737
njindal@kslaw.com
aparrish@kslaw.com

Nicole Bronnimann (D.D.C. No. TX0044)
KING AND SPALDING LLP
1100 Louisiana Street, Suite 4100
Houston, TX 77002
Telephone: (713) 751-3200
Facsimile: (713) 751-3290
nbronnimann@kslaw.com

Tina Van Bockern (D.D.C. No. CO0100)
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO 80202
Telephone: (303) 295-8107
trvanbockern@hollandhart.com

Sarah C. Bordelon (D.C. Bar 987135)
HOLLAND & HART LLP
5441 Kietzke Lane, Suite 200
Reno, NV 89511
Telephone: (775) 327-3011
Facsimile: (775) 786-6179
scbordelon@hollandhart.com

*Attorneys for Chevron U.S.A. Inc.*

Catherine E. Stetson (D.C. Bar 453221)
Sean Marotta (D.C. Bar 1006494)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5491
cate.stetson@hoganlovells.com
sean.marotta@hoganlovells.com

*Attorneys for Chevron U.S.A. Inc.*

## TABLES OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 4

I.     Chevron Is Entitled to Intervene as a Matter of Right. ......................................... 4

       A.     This Motion Is Timely. ................................................................. 6

       B.     Chevron Has Legally Protected Interests at Stake in This Action and Article III Standing. ................................................................... 7

       C.     Chevron's Interests Would Be Adversely Affected if Plaintiffs Prevail. .............. 12

       D.     Chevron's Interests Are Not Adequately Represented by the Parties. ................. 13

II.    In the Alternative, Chevron Should Be Granted Permissive Intervention. ........................ 15

CONCLUSION ....................................................................................................... 16

## **TABLE OF AUTHORITIES**

**Cases**

*Alaska Wilderness League v. Jewell*,
   99 F. Supp. 3d 112 (D.D.C. 2015) ........................................................................... 5

*Alvin Lou Media, Inc. v. F.C.C.*,
   571 F.3d 1 (D.C. Cir. 2009) ........................................................................... 5, 9

*Am. Horse Prot. Ass'n v. Veneman*,
   200 F.R.D. 153 (D.D.C. 2001) ........................................................................... 10, 14

*Amador County v. U.S. Dep't of Interior*,
   772 F.3d 901 (D.C. Cir. 2014) ........................................................................... 6

*Aristotle Int'l, Inc. v. NGP Software, Inc.*,
   714 F. Supp. 2d 1 (D.C. Cir. 2010) ........................................................................... 15

*Bible Way Church of Our Lord Jesus Christ World Wide, Inc. v. Showell*,
   260 F.R.D. 1 (D.D.C. 2009) ........................................................................... 16

*Connecticut v. U.S. Dep't of Interior*,
   344 F. Supp. 3d 279 (D.D.C. 2018) ........................................................................... 11

*County of San Miguel v. MacDonald*,
   244 F.R.D. 36 (D.D.C. 2007) ........................................................................... 14

*Crossroads Grassroots Pol'y Strategies v. FEC*,
   788 F.3d 312 (D.C. Cir. 2015) ........................................................................... 11, 12

*Diamond v. Charles*,
   476 U.S. 54 (1986) ........................................................................... 7

*Dimond v. District of Columbia*,
   792 F.2d 179 (D.C. Cir. 1986) ........................................................................... 14

*EEOC v. Nat'l Children's Ctr., Inc.*,
   146 F.3d 1042 (D.C. Cir. 1998) ........................................................................... 15

*Envt'l Def. Fund, Inc. v. Costle*,
   79 F.R.D. 235 (D.D.C. 1978) ........................................................................... 13

*Forest Cnty. Potawatomi Cmty. v. United States*,
   317 F.R.D. 6 (D.D.C. 2015) ........................................................................... 11

*Foster v. Gueory*,
   655 F.2d 1319 (D.C. Cir. 1981) ........................................................................... 13

*Friends of Animals v. Kempthorne,*
    452 F. Supp. 2d 64 (D.D.C. 2006) ................................................... 5, 10

*Fund for Animals, Inc. v. Norton,*
    322 F.3d 728 (D.C. Cir. 2003) ................................................ 4, 6, 12, 13

*Gulf Restoration Network v. Haaland,*
    47 F.4th 795 (D.C. Cir. 2022) ............................................................ 5

*Gulf Restoration Network, et al. v. Zinke et al.,*
    No. 1:18-cv-01674 (D.D.C. Dec. 7, 2018), ECF No. 35 ....................... 3, 10

*Healthy Gulf, et al. v. Bernhardt et al.,*
    No. 1:19-cv-000707 (D.D.C. June 10, 2019), ECF No. 22 ..................... 4, 11

*Healthy Gulf, et al. v. Bernhardt et al.,*
    No. 1:19-cv-000707 (D.D.C. May 28, 2019), ECF No. 19 ...................... 11

*High Plains Wireless, L.P. v. FCC,*
    276 F.3d 599 (D.C. Cir. 2002) .......................................................... 5

*In re Vitamins Antitrust Litig.,*
    No. MDL 1285, 2001 WL 34088808 (D.D.C. Mar. 19, 2001) ................ 15

*Karsner v. Lothian,*
    532 F.3d 876 (D.C. Cir. 2008) .......................................................... 4

*Mil. Toxics Project v. EPA,*
    146 F.3d 948 (D.C. Cir. 1998) ......................................................... 10

*Nat. Res. Def. Council v. Costle,*
    561 F.2d 904 (D.C. Cir. 1977) ..................................................... 12, 13

*Nat. Res. Def. Council, Inc. v. EPA,*
    99 F.R.D. 607 (D.D.C. 1983) ......................................................... 10

*Nat'l Parks Conservation Ass'n v. U.S. Forest Serv.,*
    No. CV 15-cv-01582(APM) (D.D.C. Mar. 31, 2016) ............................ 4

*Navistar, Inc. v. Jackson,*
    840 F. Supp. 2d 357 (D.D.C. 2012) ................................................ 5, 14

*NTCH, Inc. v. FCC,*
    950 F.3d 871 (D.C. Cir. 2020) .......................................................... 5

*Nuesse v. Camp,*
    385 F.2d 694 (D.C. Cir. 1967) ..................................................... 12, 13

*Roane v. Leonhart*,
   741 F.3d 147 (D.C. Cir. 2014) ................................................................................... 6

*S. Utah Wilderness All. v. Norton*,
   No. Civ.A. 01-2518(CKK), 2002 WL 32617198 (D.D.C. June 28, 2002) ........................... 5, 7

*Scotts Valley Band of Pomo Indians v. U.S. Dep't of Interior*,
   337 F.R.D. 19 (D.D.C. 2020) ..................................................................................... 6

*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 527 (1972) ............................................................................................... 13

*WildEarth Guardians v. Jewell*,
   320 F.R.D. 1 (D.D.C. 2017) ........................................................................................ 5

*WildEarth Guardians v. Jewell*,
   No. CV 16-1724 (RC), 2016 WL 11720188 (D.D.C. Nov. 23, 2016) ............................. 7, 13

*WildEarth Guardians v. Salazar*,
   272 F.R.D. 4 (D.D.C. 2010) ............................................................................. 5, 7, 9, 14

**Statutes**

Inflation Reduction Act,
   Pub. L. No. 117-169 ............................................................................................... 1, 8

**Regulations**

330 C.F.R. § 556.516 .................................................................................................. 2, 6

88 Fed. Reg. 2371 (Jan. 13, 2023) ..................................................................................... 2

88 Fed. Reg. 12,404 (Feb. 27, 2023) ................................................................................... 2

**Rules**

Fed. R. Civ. P. 4 ......................................................................................................... 6

Fed. R. Civ. P. 12 ....................................................................................................... 6

Fed. R. Civ. P. 24 ................................................................................................ *passim*

**Other Authorities**

BOEM,
   Proposed Final Program: 2017–2022 Outer Continental Shelf Oil and Gas Leasing
   (Nov. 2016), *available at* https://www.boem.gov/sites/default/files/oil-and-gas-
   energy-program/Leasing/Five-Year-Program/2017-2022/2017-2022-OCS-Oil-and-
   Gas-Leasing-PFP.pdf ................................................................................................. 8

BOEM,
Record of Decision for Gulf of Mexico OCS Oil and
Gas Lease Sale 259 (Feb. 22, 2023), *available at*
https://www.boem.gov/sites/default/files/documents/oil-gas-
energy/leasing/LS%20259%20 ROD.pdf ................................................................................. 2

Memorandum from BOEM
on Record of Decision and Approval of the 2017-2022
Outer Continental Shelf Oil and Gas Leasing Program (Jan. 17, 2017) .................................... 1

Press Release,
BOEM, *BOEM Seeks Comments on Environmental Analysis for Upcoming Gulf of
Mexico Oil and Gas Lease Sales* (Oct. 7, 2022),
https://www.boem.gov/newsroom/
notes-stakeholders/boem-seeks-comments-environmental-
analysis-upcoming-gulf-mexico-oil-and ..................................................................................... 2

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, Chevron U.S.A. Inc. ("Chevron") respectfully moves for leave to intervene as a defendant in the above-captioned matter.  As required by Local Civil Rule 7(m), counsel for Chevron have contacted known counsel for the parties to this case.  Counsel for the Plaintiffs represent that Plaintiffs are not currently taking a position but will do so after the motion is filed and Plaintiffs have had a chance to review the filing.  Counsel for Federal Defendants take no position on the motion.

## INTRODUCTION

This case concerns the Bureau of Ocean Energy Management's ("BOEM") administration of the Outer Continental Shelf Lands Act ("OCSLA") and the sale of Gulf of Mexico leases so lessees can explore for, develop, and produce oil and gas from these leases.  Plaintiffs contend that, in approving Lease Sale 259 (the "Lease Sale"), the Federal Defendants violated the National Environmental Policy Act ("NEPA") and the Administrative Procedure Act ("APA").  According to Plaintiffs, when the Federal Defendants approved the Lease Sale they failed to adequately consider the environmental impacts and the range of alternatives to their proposed actions, and they also allegedly failed to respond to certain public comments.

Congress has specifically mandated that Lease Sale 259 proceed by March 31, 2023.  On August 16, 2022, President Biden signed into law the Inflation Reduction Act, Pub. L. No. 117-169 ("IRA").  Section 50264(d) of the IRA states that the Secretary of the Department of the Interior, through BOEM, "shall conduct Lease Sale 259 in accordance with the Record of Decision approved by the Secretary on January 17, 2017" and "not later than March 31, 2023."  *See also* Memorandum from BOEM on Record of Decision and Approval of the 2017-2022 Outer Continental Shelf Oil and Gas Leasing Program (Jan. 17, 2017).

BOEM has acted to meet that congressional directive for conducting Lease Sale 259. BOEM published a draft Supplemental Environmental Impact Statement (EIS) in October 2022,

beginning a 45-day public comment period, in which Chevron and others participated.  *See* Press Release, BOEM, *BOEM Seeks Comments on Environmental Analysis for Upcoming Gulf of Mexico Oil and Gas Lease Sales* (Oct. 7, 2022), https://www.boem.gov/newsroom/notes-stakeholders/boem-seeks-comments-environmental-analysis-upcoming-gulf-mexico-oil-and.  Then, in January 2023, BOEM published its Final Supplemental EIS.  *See* 88 Fed. Reg. 2371 (Jan. 13, 2023) (Final Supplemental EIS).  In February 2023, BOEM issued its Record of Decision.  *See* BOEM, Record of Decision for Gulf of Mexico OCS Oil and Gas Lease Sale 259 (Feb. 22, 2023), *available at* https://www.boem.gov/sites/default/files/documents/oil-gas-energy/leasing/LS%2 0259%20 ROD.pdf.  Soon thereafter, BOEM issued its Final Notice of Sale.  *See* 88 Fed. Reg. 12,404 (Feb. 27, 2023) (Final Notice of Sale).

Pursuant to the Final Notice of Sale, the Lease Sale will take place March 29, 2023 at 9:00 a.m.  *Id.*  The bids will be publicly announced and posted the day of the sale on BOEM's website.  *Id.*  Each bidder submitting an apparent high bid must promptly submit a bonus bid deposit to the U.S. Treasury.  *Id.*  Leases are awarded after BOEM evaluates high bids in accordance with bid adequacy procedures.  *Id.*  BOEM generally accepts or rejects bids within 90 days of opening them at the Lease Sale, but can extend that time "if necessary."  *See* 330 C.F.R. § 556.516(b).

In accordance with this process and with the March 31, 2023 statutory deadline, Chevron has already invested heavily to prepare for Lease Sale 259 and intends to participate in the bidding process.  Declaration of Trent Webre, ¶¶ 6–7 ("Webre Decl.") (attached as Exhibit A).  If Chevron proves to be the high bidder on tracts included within Lease Sale 259, and those bids are approved by the Department of the Interior in the post-sale review process, the Department will issue Chevron leases for those tracts.

Notwithstanding Congress's directives in the IRA, Plaintiffs ask the Court to vacate the Record of Decision facilitating the Lease Sale and to vacate or enjoin the leases executed pursuant to the Lease Sale. This case thus directly implicates Chevron's interests. Chevron has already expended substantial costs and efforts to prepare to participate in the Lease Sale 259 bidding process, including by dedicating thousands of personnel hours to preparing its bids. Webre Decl. ¶ 7. Chevron expended these costs and efforts in reliance on the Lease Sale taking place, as Congress has indicated that it must, by March 31, 2023. *Id.* If the Court granted the relief requested by Plaintiffs, Chevron would be deprived of the value of these substantial investments, and its efforts and ability to bid would be nullified. Webre Decl. ¶¶ 7, 12. Furthermore, granting Plaintiffs' desired relief would deprive high bidders—including potentially Chevron—of the use of leases for which they would be named the high bidder, as well as millions of dollars in potential production opportunities from any leases awarded to Chevron at the Lease Sale. Webre Decl. ¶ 11.

In order to protect its substantial interests at stake in this litigation, Chevron moves to intervene as a defendant as a matter of right pursuant to Federal Rule of Civil Procedure 24(a). In the alternative, Chevron moves for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b). Chevron intervenes now as it has a substantial interest in the Lease Sale being challenged in this litigation and so that its motion is before the Court at the time that the Lease Sale takes place and the high bidders are announced. After the Lease Sale, as appropriate, Chevron will supplement this motion indicating its updated interests in the Lease Sale.

Intervention is proper here on the same bases that this Court has granted Chevron's previous motions to intervene when some of these Plaintiffs have challenged previous Gulf of Mexico lease sales in which Chevron has participated and obtained leases. *See Gulf Restoration Network, et al. v. Zinke et al.*, No. 1:18-cv-01674 (D.D.C. Dec. 7, 2018), ECF No. 35 (granting

Chevron's motion to intervene in litigation challenging Lease Sales 250 and 251); *Healthy Gulf, et al. v. Bernhardt et al.*, No. 1:19-cv-000707 (D.D.C. June 10, 2019), ECF No. 22 (order granting Chevron's motion to intervene in litigation challenging Lease Sale 252).

## ARGUMENT

## I.    CHEVRON IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

Rule 24(a) of the Federal Rules of Civil Procedure provides, in pertinent part, that:

> [o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless the existing parties adequately represent that interest.

Under Rule 24(a)(2), a movant has the right to intervene if (1) its motion is "timely," (2) it "claims an interest relating to the property or transaction that is the subject of the action," (3) the movant "is so situated that disposing of the action may as a practical matter impair or impede the applicant's ability to protect that interest," and (4) the existing parties do not already "adequately represent that interest." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003); *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008). Chevron satisfies each of these requirements: Chevron has timely sought to intervene, well before the Federal Defendants' response to Plaintiffs' Complaint is due; Chevron has a significant interest in BOEM actions and related transactions that this lawsuit challenges; Plaintiffs' claims, if successful, would interfere with those interests and transactions and cause Chevron significant harm; and no party in the case—nor any other entity for that matter—can adequately represent Chevron's interests in the Lease Sale at the center of this litigation.

Courts have routinely recognized entities' rights to intervene when litigation challenges their leases, permits, projects, or other similar interests. *See Nat'l Parks Conservation Ass'n v. U.S. Forest Serv.*, No. CV 15-cv-01582(APM) (D.D.C. Mar. 31, 2016) (MINUTE ORDER

granting Elkhorn Minerals LLC's Motion to Intervene in case involving permits authorizing Elkhorn to mine for gravel on a parcel of land); *WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 14–15 (D.D.C. 2010); *Alaska Wilderness League v. Jewell*, 99 F. Supp. 3d 112, 122 (D.D.C. 2015); *WildEarth Guardians v. Jewell*, 320 F.R.D. 1, 3 (D.D.C. 2017); *Navistar, Inc. v. Jackson*, 840 F. Supp. 2d 357, 361–62 (D.D.C. 2012); *Friends of Animals v. Kempthorne*, 452 F. Supp. 2d 64, 69–70 (D.D.C. 2006); *S. Utah Wilderness All. v. Norton*, No. Civ.A. 01-2518(CKK), 2002 WL 32617198, at *5 (D.D.C. June 28, 2002); *Gulf Restoration Network v. Haaland*, 47 F.4th 795, 801 (D.C. Cir. 2022) (noting Chevron as an intervenor in litigation challenging Lease Sales 250 and 251).

Furthermore, the D.C. Circuit has recognized that interested bidders have standing to protect their bidding interests with regard to government-operated auctions. *See Alvin Lou Media, Inc. v. F.C.C.*, 571 F.3d 1, 6 (D.C. Cir. 2009) ("[A] bidder in a government auction has a 'right to a legally valid procurement process'; a party allegedly deprived of this right asserts a cognizable injury.") (quoting *High Plains Wireless, L.P. v. FCC*, 276 F.3d 599, 605 (D.C. Cir. 2002) (internal citations omitted)).  Likewise, interested bidders in Lease Sale 259 like Chevron have a concrete interest for standing and intervention purposes where Plaintiffs are trying to nullify and vacate the lawful and congressionally mandated bidding process for Lease Sale 259.  *NTCH, Inc. v. FCC*, 950 F.3d 871, 879 (D.C. Cir. 2020) (The "loss of a chance to bid . . . constitutes an Article III harm" and "[i]t makes no difference whether that [Article III harm] flows from unfair procedures or the [agency's] failure to conduct any auction at all.").

Consistent with that precedent, Chevron is entitled to intervene in this case as a matter of right.

### A.     This Motion Is Timely.

"[T]he requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties." *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014).  Accordingly, "in assessing timeliness a district court must weigh whether the intervention will 'unfairly disadvantage[] the original parties.'" *Amador County v. U.S. Dep't of Interior*, 772 F.3d 901, 905 (D.C. Cir. 2014) (quoting *Roane*, 741 F.3d at 151).  There is no serious argument that intervention by Chevron is untimely or could prejudice the existing parties to this case.

Plaintiffs filed their Complaint two weeks ago, on March 6, 2023, shortly after BOEM issued its Final Notice of Sale for Lease 259.  The Federal Defendants have not filed any responsive pleading and their deadline for doing so is not until 60 days after service is completed,  which will fall after the statutory deadline for conducting Lease Sale 259.  *See* Fed. R. Civ. P. 4(m); Fed. R. Civ. P. 12(a)(2).  There have been no material developments in this litigation so far, and the Court has not taken any non-ministerial action.  Accordingly, Chevron's intervention will not unfairly prejudice existing parties nor delay adjudication of this case. *See Fund for Animals*, 322 F.3d at 735 (intervention motion was timely where motion was filed "less than two months after the plaintiffs filed their complaint and before the defendants filed an answer"); *Scotts Valley Band of Pomo Indians v. U.S. Dep't of Interior*, 337 F.R.D. 19, 26 (D.D.C. 2020) (intervention motion "did not disrupt the litigation" and, therefore was timely, where "filed just one month after the government filed the answer and before any dispositive motions practice had begun").

Chevron recognizes that BOEM may not issue leases until 90 days after the Lease Sale, *see* 330 C.F.R. § 556.516(b), and Chevron will not know for certain until then whether it has been awarded leases.  But Plaintiffs filed this litigation without waiting for BOEM to complete the Lease Sale process, and they seek to vacate the Record of Decision to hold Lease Sale 259.  Chevron has

made substantial investments to participate in Lease Sale 259, and it has a strong interest in ensuring that BOEM complies with, and this Court upholds, Congress's directives regarding the Lease Sale. Therefore, Chevron is timely filing this motion at the start of litigation to ensure that it is able to protect its interest in having the ability to bid at the Lease Sale. As noted above, those bidding interests alone support Chevron's right to intervene, in addition to any property interests that Chevron may ultimately obtain from the Lease Sale.

### B.   Chevron Has Legally Protected Interests at Stake in This Action and Article III Standing.

The second requirement for intervention of right is that the intervenor must demonstrate "an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). To demonstrate a sufficient "interest," prospective intervenors must show a "direct and concrete interest that is accorded some degree of legal protection." *Diamond v. Charles*, 476 U.S. 54, 75 (1986) (O'Connor, J., concurring). Courts apply a "liberal approach" in evaluating a proposed intervenor's interest under Rule 24(a). *S. Utah Wilderness All.*, 2002 WL 32617198, at *5. "The test [for determining whether there is an interest under Rule 24(a)] operates in large part as a practical guide, with the aim of disposing of disputes with as many concerned parties as may be compatible with efficiency and due process." *WildEarth Guardians v. Jewell*, No. CV 16-1724 (RC), 2016 WL 11720188, at *2 (D.D.C. Nov. 23, 2016) (quoting *WildEarth Guardians*, 272 F.R.D. at 12–13).

Chevron conducts extensive operations in the OCS of the Gulf of Mexico. Chevron has participated in more than 37 lease sales in the Gulf of Mexico and been awarded over a hundred leases from participating in those lease sales. Webre Decl. ¶¶ 3–6. Indeed, Interior's competitive lease sales are a critical aspect of Chevron's Gulf of Mexico business. Webre Decl. ¶ 9. Chevron

has relied on the availability of these lease sales in deciding to invest billions of dollars to acquire, explore, develop, and produce from its Gulf of Mexico leases.  *Id.*

Chevron has been an especially active participant in the Gulf of Mexico lease sales occurring pursuant to the 2017-2022 Outer Continental Shelf Oil and Gas Leasing Program, bidding in all Gulf of Mexico lease sales from that Program.  *See* BOEM, Proposed Final Program: 2017–2022 Outer Continental Shelf Oil and Gas Leasing at S-4 (Nov. 2016), *available at* https://www.boem.gov/sites/default/files/oil-and-gas-energy-program/Leasing/Five-Year-Program/2017-2022/2017-2022-OCS-Oil-and-Gas-Leasing-PFP.pdf.  For instance, in Lease Sale 250, Chevron was the high bidder on 24 tracts and was awarded 24 leases.  Webre Decl. ¶ 5.  In Lease Sale 251, Chevron was the high bidder on 5 tracts and was awarded 5 leases.  *Id.*  In Lease Sale 252, Chevron was the high bidder on 8 tracts and was awarded 8 leases.  *Id.*  In Lease Sale 253, Chevron was the high bidder on 17 tracts and was awarded 15 leases.  *Id.*  In Lease Sale 254, Chevron was the high bidder on 15 tracts and was awarded 15 leases.  *Id.*  In Lease Sale 256, Chevron was the high bidder on 10 tracts and was awarded 8 leases.  *Id.*  In Lease Sale 257, Chevron was the high bidder on 34 tracts and was awarded 34 leases.  *Id.*  Chevron likewise intends to and has made substantial investments to participate in Lease Sale 259.  *See* Webre Decl. ¶¶ 6–7.

Chevron's reliance on the availability and timing of Lease Sale 259 is well-founded given that, through the IRA enacted in August 2022, Congress specifically directed Interior to conduct Sale 259 and another Gulf of Mexico lease sale by dates certain—setting a statutory deadline for Lease Sale 259 of March 31, 2023.  *See* IRA § 50264(d); Webre Decl. ¶¶ 6–7.  As a result of this reasonable reliance, Chevron has already incurred substantial costs preparing for the Lease Sale 259 bidding process, and for it to proceed on the timeline Congress mandated.  Webre Decl. ¶¶ 7,

12.  These efforts and costs include thousands of hours expended by a team of geoscientists, engineers, land professionals, regulatory experts, finance professionals, and executives, who together developed a strategy for bidding on available unleased acreage.  *Id.* at ¶ 7.

If Lease Sale 259 is held, as Congress has directed it must be, by March 31, 2023, Chevron plans to participate in the bidding process.  Since 2018, Chevron has been the high bidder on a total of 113 Gulf of Mexico leases and has ultimately been awarded 109 leases, meaning that Chevron has been awarded leases for tracts in which it has been the high bidder approximately 96% of the time.  Webre Decl. ¶ 5.  Chevron has paid the full bonus bid and rental payments required to secure the leases on which it has been named high bidder and in which BOEM's post-sale reviews have resulted in the agency awarding Chevron the leases. Webre Decl. ¶ 8.  Continuing its active role from previous Gulf of Mexico lease sales, Chevron intends to be an active participant in Lease Sale 259.  Webre Decl. ¶ 6.  And indeed Chevron has acquired property interests in its existing leases in the Gulf of Mexico in part in reliance on being able to participate in future competitive lease sales administered by the Interior—like Lease Sale 259.  Webre Decl. ¶ 9.

Plaintiffs' complaint challenges the legality of Lease Sale 259 and requests an order vacating its approval and enjoining the leases themselves.  These actions would jeopardize Chevron's interest in Lease Sale 259 taking place and its investments in preparing for the Lease Sale, at which Chevron intends to place bids. *See Alvin Lou Media*, 571 F.3d at 6 (recognizing the "right of a disappointed bidder in a government auction to a legally valid procurement process"); *WildEarth Guardians*, 272 F.R.D. at 16 (in suit challenging Interior's leasing of public lands for mining operations, coal mining company's intervention proper where it "intends to bid on the leases when they are put up for sale" and there are good reasons to assume it will be successful in

bidding); *Am. Horse Prot. Ass'n v. Veneman*, 200 F.R.D. 153, 156 (D.D.C. 2001) (intervention proper for horse-breeding fund in suit challenging Department of Agriculture's implementation of its Operating Plan where "[t]he invalidation of the Plan will render nugatory all the efforts the Fund's members have made to date in assisting its creation and will lead to a period of uncertainty during which a new regulatory scheme is created."); *Mil. Toxics Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998) (intervention proper where would-be intervenors were "directly subject to the challenged rule" and would "benefit from" the government's interpretation of it); *Nat. Res. Def. Council, Inc. v. EPA*, 99 F.R.D. 607, 609 (D.D.C. 1983) (intervention proper where intervenors had "spent several years trying to demonstrate to EPA that the pesticides they manufacture are not so dangerous that their registration should be restricted" and where "[i]f plaintiffs prevail[ed] . . . this effort may be nullified."); *Friends of Animals*, 452 F. Supp. 2d at 70 (intervention proper where intervenors had a substantial property interest in the promulgation of the challenged rule and would be subject to "costs, delays and uncertainties" if denied intervention).

Plaintiffs' requested relief would also jeopardize Chevron's participation in transactions connected to Sale 259 and property interests in any leases that are ultimately awarded through Lease Sale 259. Webre Decl. ¶ 11. It could also impact Chevron's existing position in the Gulf of Mexico, which Chevron has developed, in part, in reliance on its prospective ability to bid for and acquire new leases of Gulf of Mexico blocks through lease sales administered by the Interior. Webre Decl. ¶¶ 4, 9. This Court has also granted several of Chevron's motions to intervene in related lease sale challenges, where, at the time Chevron filed its motion for intervention, the Department of the Interior was analyzing bids for which Chevron was the highest bidder. *See Gulf Restoration Network*, No. 1:18-cv-01674 (D.D.C. Dec. 7, 2018), ECF No. 35 (granting Chevron's

motion to intervene in litigation challenging Lease Sales 250 and 251); Order at 4–5, *Healthy Gulf, et al. v. Bernhardt et al.*, No. 1:19-cv-000707 (D.D.C. May 28, 2019), ECF No. 19 (Chevron motion to intervene explaining that Chevron was the high bidder on certain tracts in Lease Sale 252 and that the Department of the Interior was evaluating the bids); *Healthy Gulf*, No. 1:19-cv-000707 (D.D.C. June 10, 2019), ECF No. 22 (order granting Chevron's motion to intervene in litigation challenging Lease Sale 252).

For the same reasons as described above, Chevron has Article III standing.  The D.C. Circuit has recognized that "the standards for constitutional standing and the second factor of the test for intervention as of right are the same."  *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 320 (D.C. Cir. 2015).  When a party seeks to intervene as a defendant to uphold an action taken by the government, the party establishes standing by showing that it has been "'injured in fact by the setting aside of the government's action it seeks to defend, that this injury would have been caused by that invalidation, and the injury would be prevented if the government action is upheld.'"  *Connecticut v. U.S. Dep't of Interior*, 344 F. Supp. 3d 279, 297 (D.D.C. 2018) (quoting *Forest Cnty. Potawatomi Cmty. v. United States*, 317 F.R.D. 6, 11 (D.D.C. 2015)).

Chevron has standing in this case because if the Plaintiffs achieve the remedy they seek, and prevent the Lease Sale that has been directed by both Congress and BOEM, Chevron will be injured by losing  the opportunity to meaningfully bid on these leases by the March 31, 2023 deadline.  Indeed, the substantial costs and efforts Chevron has already expended to prepare for the Lease Sale 259 bidding process— and for the Lease Sale to proceed as Congress mandated by March 31, 2023—will go to waste.  Webre Decl. ¶¶ 7, 12.  Moreover, the relief that Plaintiffs seek would result in the loss or delayed use of any leases awarded as a result of participating in the bidding process.  Webre Decl. ¶¶ 9, 11.  An unfavorable decision in the litigation challenging the

Lease Sale would deprive Chevron of the value of its investment to participate in the Lease Sale and the tremendous efforts it has expended as a company.  *See also Crossroads*, 788 F.3d at 317 ("Our cases have generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit.").

## C.   Chevron's Interests Would Be Adversely Affected if Plaintiffs Prevail.

The third factor under Rule 24(a) requires putative intervenors to show that they are "so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest."  Fed. R. Civ. P. 24(a)(2).  In analyzing this factor, the Court should "look[] to the 'practical consequences' of denying intervention, even where the possibility of future challenge . . . remain[s] available."  *Nat. Res. Def. Council v. Costle* ("*NRDC*"), 561 F.2d 904, 909 (D.C. Cir. 1977).  It is irrelevant whether the applicant "could reverse an unfavorable ruling" in subsequent proceedings because "there is no question that the task of reestablishing the status quo if the [plaintiff] succeeds . . . will be difficult and burdensome."  *Fund for Animals*, 322 F.3d at 735.  Intervention is proper when it allows the practical and efficient management of the claims of concerned individuals.  *See Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967).

Plaintiffs have requested the court to vacate the decisions approving the Lease Sale and to vacate or enjoin these leases.  As explained above, Chevron has already expended substantial costs in preparing for Lease Sale 259, in reasonable reliance on Congress' mandate that BOEM hold the sale by March 31, 2023.  Webre Decl. ¶ 7.  A team of interdisciplinary personnel (comprised of geoscientists, engineers, land professionals, regulatory experts, finance professionals, and executives) has spent thousands of hours to develop a strategy for bidding on available unleased acreage.  *Id.*  This strategy, which required significant amounts of money and effort to create, would need to be redone at a loss, or simply will go to waste, if Plaintiffs successfully delay or

prevent the sale.  Webre Decl. ¶ 12.  Furthermore, Plaintiffs' requested relief would deprive high bidders—potentially including Chevron—of the use of leases for which they would be awarded from Lease Sale 259, as well as millions of dollars in potential production opportunities for these tracts for which leases will be awarded.  Webre Decl. ¶ 11.

If Plaintiffs are successful, the investments Chevron has already made in reliance on the challenged Lease Sale going forward, as well as investments for any future operations tied to any leases it is awarded in the Lease Sale, will be jeopardized.  Thus, the disposition of this action unquestionably impacts Chevron's legally protectable interests.  *See WildEarth Guardians*, 2016 WL 11720188, at *2 (intervention by trade association appropriate where enjoining federal defendants from issuing permits to drill would likely "substantially delay the oil and gas development activities of" its members).

### D.   Chevron's Interests Are Not Adequately Represented by the Parties.

The final element for intervention "requires that the [applicants] show that their interests are not adequately represented by the existing parties."  *Foster v. Gueory*, 655 F.2d 1319, 1325 (D.C. Cir. 1981).  This burden is "minimal" and is met "if the applicant[s] show[] that representation of [their] interest[s] 'may be' inadequate."  *Id.* (citation omitted); *see also Envt'l Def. Fund, Inc. v. Costle*, 79 F.R.D. 235, 239 (D.D.C. 1978) ("[T]he proposed intervenors need only show that the representation of their interests by the other parties may be inadequate, and this burden is a minimal one.") (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 527, 538 n.10 (1972)).  Moreover, a prospective intervenor's "interests need not be wholly 'adverse' before there is a basis for concluding that existing representation of a 'different' interest may be inadequate."  *Nuesse*, 385 F.2d at 703.

Courts often have concluded that "governmental entities do not adequately represent the interests of aspiring intervenors."  *Fund for Animals*, 322 F.3d at 736 n.9 (collecting cases); *NRDC*,

561 F.2d at 912 (finding the intervenors' interest "more narrow and focused than [the government party], being concerned primarily with the regulation that affects their industries"); *Navistar, Inc. v. Jackson*, 840 F. Supp. 2d 357, 362 (D.D.C. 2012) (finding the federal agency was "unlikely to, and arguably should not, afford the movant's 'discrete and particularized interests the same primacy' as movants would themselves") (quoting *WildEarth Guardians*, 272 F.R.D. at 15)); *County of San Miguel v. MacDonald*, 244 F.R.D. 36, 48 (D.D.C. 2007) (contrasting the Fish & Wildlife Service's obligation of representing the general public with intervenors' interests to protect their livelihoods and business operations); *see also Am. Horse Prot. Ass'n*, 200 F.R.D. at 159 (finding inadequate representation where "budgetary and manpower demands may drive how much time the USDA can devote to this litigation and whether it can settle this case...").

Here, the Federal Defendants do not adequately represent Chevron's specific interests, as Chevron's interests are more narrowly focused than those of the Federal Defendants.  *See WildEarth Guardians*, 272 F.R.D. at 5 (noting that "governmental entities generally cannot represent the [interests] of a private party." ) (internal citation omitted).  Specifically, while the Federal Defendants are concerned with protecting the interests of the public in general, Chevron's focus is on protecting its individual investments in Lease Sale 259.  *See Dimond v. District of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986) (noting that the government defendant "would face a potential conflict of interest were it to represent both the general interests of its citizens and the financial interests of" the proposed intervenor).  Chevron's interests in Lease Sale 259 are unique to the company and cannot be represented by a government entity—or any entity for matter.  Because Chevron has satisfied its minimal burden of showing that the current representation is inadequate, Chevron therefore should be granted intervention as of right.

## II.     IN THE ALTERNATIVE, CHEVRON SHOULD BE GRANTED PERMISSIVE INTERVENTION.

If Chevron is not granted intervention as a matter of right, it should be granted permissive intervention under Federal Rule of Civil Procedure 24(b)(1)(B), which allows this Court to permit intervention if a movant "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  A Court should permit intervention when there is "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action."  *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).  The court also considers whether the proposed intervention "will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  "[P]ermissive intervention is an inherently discretionary enterprise."  *Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 18 (D.C. Cir. 2010) (quoting *Nat'l Children's Ctr.*, 146 F.3d at 1046).  Rule 24 is construed "liberally" in favor of potential intervenors.  *In re Vitamins Antitrust Litig.*, No. MDL 1285, 2001 WL 34088808, at *3 (D.D.C. Mar. 19, 2001).

All of these factors support Chevron's request for intervention.  Chevron's defenses and the allegations in the Plaintiffs' Complaint involve common questions of law (including the standards imposed by NEPA and the APA) and common facts (including the Federal Defendants' fulfillment of their obligations under those statutes).  Both Plaintiffs' allegations and Chevron's defenses turn on the facts surrounding Federal Defendants' environmental review of the Lease Sale and whether that review satisfied applicable federal law.  Absent intervention, Chevron will lack the opportunity to adequately defend the substantial investment it has made in reliance on Lease Sale 259 proceeding, as well as in any leases it is awarded through the sale.  Meanwhile, allowing Chevron to intervene "will promote judicial efficiency and consistency."  *Bible Way*

*Church of Our Lord Jesus Christ World Wide, Inc. v. Showell*, 260 F.R.D. 1, 4 (D.D.C. 2009).  As described above, the existing parties will not be prejudiced by Chevron's intervention because there have been no material developments in the case so far, which was filed approximately two weeks ago.  Furthermore, Chevron will abide by any future procedural and briefing schedules entered by this Court if granted intervention.

## **CONCLUSION**

Chevron respectfully moves the Court for leave to intervene in this matter without limitation.

Respectfully submitted this 22nd day of March, 2023.

/s/ Nikesh Jindal
Nikesh Jindal (D.C. Bar 492008)
Ashley C. Parrish (D.C. Bar 464683)
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737
njindal@kslaw.com
aparrish@kslaw.com

Nicole Bronnimann (D.D.C. No. TX0044)
KING & SPALDING LLP
1100 Louisiana Street, Suite 4100
Houston, TX 77002
Telephone: (713) 751-3200
Facsimile: (713) 751-3290
nbronnimann@kslaw.com

Tina Van Bockern (D.D.C. No. CO0100)
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO 80202
Telephone: (303) 295-8107
trvanbockern@hollandhart.com

Sarah C. Bordelon (D.C. Bar 987135)
HOLLAND & HART LLP
5441 Kietzke Lane, Suite 200
Reno, NV 89511
Telephone: (775) 327-3011
Facsimile: (775) 786-6179
scbordelon@hollandhart.com

Catherine E. Stetson (D.C. Bar 453221)
Sean Marotta (D.C. Bar 1006494)
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, DC 20004
(202) 637-5491
cate.stetson@hoganlovells.com
sean.marotta@hoganlovells.com

**Attorneys for Chevron U.S.A. Inc.**

17

## <u>INDEX OF EXHIBITS</u>

| Exhibit | Description |
|---------|-------------|
| A | Proposed Answer, Defenses, and Affirmative Defenses to Plaintiffs' Complaint for Declaratory and Injunctive Relief |
| B | Declaration of Trent Webre in Support of Chevron U.S.A. Inc.'s Motion to Intervene |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of March, 2023, I caused a true and correct copy of the foregoing Motion to Intervene in Support of Defendants and all attachments to be filed with the Court electronically and served by the Court's CM/ECF system upon listed counsel for the Plaintiffs, and Federal Defendants:

Jan Erik Hasselman
EARTHJUSTICE
810 Third Avenue
Suite 610
Seattle, WA 98104
206-343-7340
Fax: 415-217-2040
Email: jhasselman@earthjustice.org

*Counsel for Plaintiffs Bayou City
Waterkeeper,  Friends of the Earth, and
Counsel for Center for Biological Diversity*

Kristen Monsell
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway
Suite 800
Oakland, CA 94612
510-844-7100
Email: kmonsell@biologicaldiversity.org

*Counsel for Center for Biological Diversity*

Thomas Zimpleman
NATURAL RESOURCES DEFENSE
COUNCIL
1152 15th St. NW
Suite 300
Washington, DC 20005
202-513-6244
Email: tzimpleman@nrdc.org

*Counsel for Natural Resources Defense
Council*

*/s/ Nikesh Jindal*
Nikesh Jindal