**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HEALTHY GULF, BAYOU CITY WATERKEEPER, FRIENDS OF THE EARTH, CENTER FOR BIOLOGICAL DIVERSITY, NATURAL RESOURCES DEFENSE COUNCIL, and SIERRA CLUB,<br><br>*Plaintiffs*,<br><br>v.<br><br>DEBRA A. HAALAND, LAURA DANIEL-DAVIS, U.S. DEPARTMENT OF THE INTERIOR, and BUREAU OF OCEAN ENERGY MANAGEMENT,<br><br>*Defendants*,<br><br>and<br><br>AMERICAN PETROLEUM INSTITUTE, and CHEVRON U.S.A. INC.,<br><br>*Intervenor-Defendants*. | No. 1:23-cv-00604-APM |

**REPLY OF INTERVENOR-DEFENDANTS AMERICAN PETROLEUM INSTITUTE
AND CHEVRON U.S.A. INC.**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION .............................................................................................................................. 1

ARGUMENT ...................................................................................................................................... 1

    I.    Unenforceable CEQ Regulations Permeate Plaintiffs' Entire Lawsuit ............................ 1

    II.    *Marin Audubon* Does Not Support Plaintiffs' Greenhouse-Gas Arguments .................... 2

    III.    The Government's Defenses Of CEQ's Authority Are Meritless ..................................... 4

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

Page

**CASES:**

*AMG Cap. Mgmt., LLC v. FTC*,
   593 U.S. 67 (2021)...................................................................................................5

*Andrus v. Sierra Club*,
   442 U.S. 347 (1979).................................................................................................4

*Bismullah v. Gates*,
   551 F.3d 1068 (D.C. Cir. 2009)................................................................................4

*Citizens Action Coal. of Ind., Inc. v. FERC*,
   No. 23-1046, __ F.4th __ (D.C. Cir. Jan. 7, 2025) ...................................................1

*City of Port Isabel v. FERC*,
   111 F.4th 1198 (D.C. Cir. 2024)...............................................................................5

*Conservation L. Found. v. FERC*,
   216 F.3d 41 (D.C. Cir. 2000)....................................................................................3

*DOT v. Public Citizen*,
   541 U.S. 752 (2004).................................................................................................4

\* *Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024)..............................................................................................4, 5

\* *Marin Audubon Soc'y v. FAA*,
   121 F.4th 902 (D.C. Cir. 2024)..............................................................................3, 4

*Minnesota Pub. Int. Rsch. Grp. v. Butz*,
   498 F.2d 1314 (8th Cir. 1974)..................................................................................2

*Rushforth v. CEA*,
   762 F.2d 1038 (D.C. Cir. 1985)................................................................................4

*Sierra Club v. DOE*,
   867 F.3d 189 (D.C. Cir. 2017)..................................................................................2

*Nevada v. DOE*,
   457 F.3d 78 (D.C. Cir. 2006)....................................................................................2

*Telesat Canada v. FCC*,
   999 F.3d 707 (D.C. Cir. 2021)..................................................................................5

\* Authorities upon which we chiefly rely are marked with an asterisk.

## TABLE OF AUTHORITIES—Continued

Page

*Vermont Yankee Nuclear Power Corp. v. NRDC*,
   435 U.S. 519 (1978) ...................................................................................... 2

**STATUTES:**

42 U.S.C. § 4332 .............................................................................................. 2

42 U.S.C. § 4332(C)(iii) ................................................................................... 2

42 U.S.C. § 4344(3) ......................................................................................... 4

42 U.S.C. § 4344(4) ......................................................................................... 4

49 U.S.C. § 40128(b)(4)(C) ............................................................................. 5

Pub. L. No. 118-5, 137 Stat. 10 (2023) ........................................................... 5

**ADMINISTRATIVE AUTHORITIES:**

40 C.F.R. § 1500.3 (2003) ............................................................................... 4

88 Fed. Reg. 47,453 (July 24, 2023) ............................................................... 2

**INTRODUCTION**

The Court need not reach the *Marin Audubon* question because an agency action that complies with CEQ's guidance—as Lease Sale 259 does—can be upheld on that basis alone. *See Citizens Action Coal. of Ind., Inc. v. FERC*, No. 23-1046, __ F.4th __, slip op. 13 n.3 (D.C. Cir. Jan. 7, 2025).  But if the Court does, *Marin Audubon* made clear that CEQ's *ultra vires* regulations are judicially unenforceable.  Plaintiffs' new attempt to distance themselves from CEQ's regulations does not reflect the reality that CEQ's regulations permeate their entire lawsuit.  And Plaintiffs' effort to twist *Marin Audubon* to support their greenhouse-gas claim is baseless.

The Government, for its part, has sidestepped the Court's direction to address *Marin Audubon*'s effect in this case by requesting a stay of the Court's decision.  The Court need not wait, especially not to hold that Plaintiffs lack standing; that the IRA forecloses their claims; or that their complaints are meritless aside from CEQ's *ultra vires* regulations.  But to the extent the Court is inclined to delay, it should address all potential changes in the NEPA landscape together by waiting until the rehearing petition is resolved in *City of Port Isabel v. FERC*, No. 23-01174 (D.C. Cir.), which offers an alternative vehicle for the *en banc* D.C. Circuit to address the CEQ issue,[1] and until the Supreme Court decides *Seven County Infrastructure Coalition v. Eagle County*, No. 23-975.

**ARGUMENT**

I. **Unenforceable CEQ Regulations Permeate Plaintiffs' Entire Lawsuit.**

Plaintiffs try to distance themselves from CEQ's unenforceable regulations, insisting that "none" of their claims rely on them and that the Court need not "find a violation of any specific

---

[1] *See* Joint Reply Br. at 2, 8-10, *City of Port Isabel*, No. 23-01174 (D.C. Cir. Dec. 17, 2024).

1

CEQ regulation." ECF 71 at 4-5, 7. That is wrong: *every* claim is inextricably intertwined with CEQ's judicially unenforceable standards, *see* ECF 72 at 2-9, as Plaintiffs confirmed at oral argument and throughout their briefing.[2]

Plaintiffs relied on CEQ regulations because NEPA's statutory requirements, *see* 42 U.S.C. § 4332, do not support them. Further, the judicially created "hard look" standard is exceedingly deferential; courts may not "flyspeck [the agency]'s environmental analysis for any deficiency no matter how minor," *Sierra Club v. DOE*, 867 F.3d 189, 196 (D.C. Cir. 2017) (citations and quotation marks omitted), and the errors Plaintiffs claim are not "significant enough to defeat the goals of informed decision making and informed public comment," *Nevada v. DOE*, 457 F.3d 78, 93 (D.C. Cir. 2006) (citation omitted). Plaintiffs rely on irrelevant cases applying CEQ guidance, which do not inform NEPA's requirements. ECF 71 at 6-9.[3] Further, an agency's alternatives analysis "cannot be found wanting simply because the agency failed to include every alternative device and thought conceivable by the mind of man," *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 551 (1978), and agencies need not consider options that do not "meet the purpose and need" of the action. 42 U.S.C. § 4332(C)(iii).[4] The Bureau's consideration of multiple alternatives easily satisfied any NEPA requirement.

## II.  *Marin Audubon* Does Not Support Plaintiffs' Greenhouse-Gas Arguments.

*Marin Audubon* identified a NEPA problem that bears no resemblance to Plaintiffs'

---

[2] Oral Arg. Tr. 12, 16, 19, 30, 34, 36, 37, 39, 40, 42, 121, 122; ECF 52-1 at vii-viii; ECF 59 at vi.

[3] For example, Plaintiffs' environmental-justice argument relies on an out-of-circuit case that does not discuss environmental justice and, at any rate, quotes in dicta unenforceable CEQ guidance about indirect and cumulative impacts generally. *See Minnesota Pub. Int. Rsch. Grp. v. Butz*, 498 F.2d 1314, 1322 (8th Cir. 1974) (en banc) (cited at ECF 71 at 9).

[4] *E.g.*, the Bureau's goal of holding at least a 60-million-acre sale—an IRA prerequisite for future wind leasing, BOEM20094—left the Bureau with no obligation to consider withdrawing from the ultimate 73.3-million-acre sale an additional 18-million-plus acres for the Rice's whale as Plaintiffs demand. *See* BOEM20096; 88 Fed. Reg. 47,453, 47,467-68 (July 24, 2023).

greenhouse-gas claim. *Contra* ECF 71 at 3-4. *Marin Audubon* faulted the FAA's use of "the existing level of flights" over national parks as the baseline for the NEPA analysis because those flights were allowed only under the Parks Act's "interim operating authority"—a "stopgap measure" aimed at allowing continued air tours while environmental reviews were pending—and "the Parks Act makes clear that the provisional grant of interim operating authority should not function as the baseline for environmental analysis." 121 F.4th 902, 916-917 (D.C. Cir. 2024). Congress's "detailed scheme" was clear that the proper baseline was instead the status quo *before* the flights authorized under the interim operating authority, particularly because "no previous NEPA analysis" of the existing level of flights had ever occurred. *Id.* at 916-917 (citation omitted). *Marin Audubon* distinguished other cases where "existing conditions" appropriately formed the agency's NEPA baseline because "the relevant statute 'says nothing about whether the baseline for the [agency's] comparative inquiry should be today or sometime other than today.' " *Id.* at 917 (quoting *Conservation L. Found. v. FERC*, 216 F.3d 41, 46 (D.C. Cir. 2000)). *Marin Audubon*'s holding on this point is thus unique to the Parks Act.

Unlike *Marin Audubon*, Plaintiffs do not identify a statute prohibiting the Bureau from using existing levels of Gulf oil-and-gas leasing as the baseline for the greenhouse-gas analysis. There is no equivalent of the Parks Act's interim operating authority in OCSLA, nor does OCSLA "make[ ] clear" that the baseline had to incorporate lifecycle emissions or future climate goals. *Id.* at 917. Moreover, Plaintiffs' complaint—that the baseline failed to incorporate predictions about *future* events that may never occur, ECF 71 at 3—does not resemble the claim in *Marin Audubon* that the agency should have used a baseline further in the *past*. And because Lease Sale 259 has undergone four comprehensive NEPA reviews, this is far from an action with "no previous NEPA analysis." *Marin Audubon* does not support Plaintiffs' position.

3

**III.     The Government's Defenses Of CEQ's Authority Are Meritless.**

Although declining to apply *Marin Audubon* to this case, the Government offers various reasons why NEPA should nevertheless be read to empower CEQ. None persuade.

*First*, it is irrelevant that NEPA directs CEQ to "develop policies." ECF 70 at 6. That direction conveys "no regulatory power," *Rushforth v. CEA*, 762 F.2d 1038, 1042-43 (D.C. Cir. 1985) (addressing "identical" statute); *see Marin Audubon*, 121 F.4th at 912 n.4, to dictate how agencies operate, *see* 42 U.S.C. § 4344(3) (duty "to review and appraise the various programs and activities" "for the purpose" of "mak[ing] recommendations *to the President*") (emphasis added); *id.* § 4344(4) (similar).

*Second*, it is irrelevant that four Supreme Court cases referenced CEQ regulations. *See* ECF 70 at 7. No party in those cases raised the separations-of-powers issue,[5] and, even if they had, resolving it would have been unnecessary because the Supreme Court upheld the agencies' decisions against NEPA challenges. The Government's citations are also unhelpful. The *Public Citizen* cite is to the case's background section, which merely recites multiple CEQ regulations without addressing their legality. *See DOT v. Public Citizen*, 541 U.S. 752, 757 (2004) (citing 40 C.F.R. § 1500.3 (2003)). *Robertson* and *Marsh* simply repeat that "CEQ's interpretation of NEPA is entitled to substantial deference," *Andrus v. Sierra Club*, 442 U.S. 347, 358 (1979), which does not survive the Supreme Court's recent conclusion that "agency interpretations of statutes . . . are *not* entitled to deference." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024). The Government's cases "cannot rescue CEQ's regulations." *Marin Audubon*, 121 F.4th at 913.

---

[5] *See Bismullah v. Gates*, 551 F.3d 1068, 1071 (D.C. Cir. 2009) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.") (citation omitted).

*Third*, Congress has not "ratified" an "understanding" that CEQ may issue binding regulations. ECF 70 at 7. The 2023 NEPA amendments selectively incorporated certain concepts from CEQ regulations, *e.g.*, Pub. L. No. 118-5, 137 Stat. 10, 43-44 (providing for categorical exclusions), without addressing CEQ's rulemaking authority. "[I]solated amendments" like these make it "impossible to assert with any degree of assurance" that Congress approved the Government's interpretation. *AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67, 81 (2021) (citation omitted). The contrary inference is more plausible: Congress had no reason to add these concepts to the statute if it believed CEQ regulations already controlled. The Government's insistence that "Congress has said nothing to challenge" CEQ's supposed authority, ECF 70 at 8, is irrelevant; even "undisputed" agency interpretations do "not graduate into a statute through mere Congressional inaction." *Telesat Canada v. FCC*, 999 F.3d 707, 712 (D.C. Cir. 2021). And the fact that Congress directed particular agencies in other statutes to "comply with" select CEQ regulations, 49 U.S.C. § 40128(b)(4)(C); *see* ECF 70 at 8, reflects Congress's understanding that CEQ regulations are advisory; otherwise, there would have been no need to direct compliance.

Plaintiffs alternatively urge that CEQ's regulations, even if not "judicially enforceable," "should be treated as guidance that is entitled to considerable respect." ECF 71 at 6. But CEQ's regulations are not "useful in determining [NEPA's] meaning," particularly as they were not "issued contemporaneously" with NEPA and have not "remained consistent over time." *Loper Bright*, 603 U.S. at 394. Plaintiffs' single cited D.C. Circuit case assumed CEQ's regulations were binding, not guidance, *see City of Port Isabel v. FERC*, 111 F.4th 1198, 1207 (D.C. Cir. 2024) (cited at ECF 71 at 6), and, in any event, is the subject of a pending rehearing petition.

5

|  | Respectfully submitted, |
|---|---|
| */s/ Steven J. Rosenbaum* | */s/ Sean Marotta* |
| Steven J. Rosenbaum (D.C. Bar 331728) | Catherine E. Stetson (D.C. Bar 453221) |
| Bradley K. Ervin (D.C. Bar 982559) | Sean Marotta (D.C. Bar 1006494) |
| COVINGTON & BURLING, LLP | Dana A. Raphael (D.C. Bar 1741559) |
| One CityCenter | HOGAN LOVELLS US LLP |
| 850 Tenth Street N.W. | 555 Thirteenth Street N.W. |
| Washington, D.C. 20001 | Washington, D.C. 20004 |
| Phone: (202) 662-6000 | (202) 637-5491 |
| Fax: (202) 662-6291 | cate.stetson@hoganlovells.com |
| srosenbaum@cov.com | sean.marotta@hoganlovells.com |
|  | dana.raphael@hoganlovells.com |
| *Counsel for American Petroleum Institute* |  |

Nikesh Jindal (D.C. Bar 492008)
Ashley C. Parrish (D.C. Bar 464683)
KING & SPALDING LLP
1700 Pennsylvania Avenue N.W.
Washington, D.C. 20006
(202) 737-0500
njindal@kslaw.com
aparrish@kslaw.com

Nicole Bronnimann (D.D.C. No. TX0044)
KING & SPALDING LLP
1100 Louisiana Street, Suite 4100
Houston, TX 77002
(713) 751-3200
nbronnimann@kslaw.com

Sarah C. Bordelon (D.C. Bar 987135)
HOLLAND & HART LLP
5441 Kietzke Lane, Suite 200
Reno, NV 89511
(775) 327-3011
scbordelon@hollandhart.com

Tina Van Bockern (D.D.C. No. CO0100)
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
(303) 295-8107
trvanbockern@hollandhart.com

*Counsel for Chevron U.S.A. Inc.*

January 10, 2025

**CERTIFICATE OF SERVICE**

      I hereby certify that on January 10, 2025, I caused a true and correct copy of the foregoing to be filed with the Court electronically and served by the Court's CM/ECF System upon the listed counsel of record.

                                                             */s/ Sean Marotta*
                                                             Sean Marotta